We'll now turn to case 11-17474, which is Demaree, and again, this is an Idaho boy trying to say these words so I might have it wrong, Demaree v. Wal-Mart Stores. I appreciate the courtesy given here by people moving in and out during this particular matter. If anybody else wants to move in or out, now's a good time because we'd hope you wouldn't do it during argument. Thank you very much. We'll now then hear from counsel for the appellant. Good morning, your honors, and just wanted to check before we start. Are we now at 10 minutes instead of 15 minutes? I understood we were giving you 15, but that you all thought it was 10, and really it should have been 10. If you need 15 only getting it this morning, you're going to get it because I don't want to take away from what you have. Thank you, your honor. 10 is good? 10 is fine, I'll do my best to get it down. How's the other side feel? Yes, your honor, 10 is fine. Thank you, your honor. Good morning, my name is Richard Treon, counsel for the plaintiffs and appellants. Lisa and A.J. Demaree, if I didn't pronounce it correctly, your honor, and with us today are Lisa and A.J. and also Jeannie Stump and Linda Breedlove, hardworking paralegals on the case. The first subject I would like to address is the issue of consumer fraud. It's our position the district court erred in finding as a matter of law that A.J. Demaree's expectation that his right of privacy and his pictures that he was presenting to Wal-Mart for developing would be respected and that Wal-Mart would not have, as it did, a secret unprintable print policy, unsuitable print policy that they applied. Well, but just a minute, I'm a little worried with your consumer fraud argument in that it seems to me that it's akin to arguing that Wal-Mart failed to explain to your client the state of the law on permissive reporting. Your honor, I mean, if you're really going to take the consumer fraud argument to its extreme, what you're saying is Wal-Mart should have explained the law to your client. Your honor, our position is that Wal-Mart had a duty, as it advertised, to tell its customers the truth. Well, the truth, is Wal-Mart supposed to tell them the law that applies in this particular situation? No, your honor. They should warn them that they have a policy. Do they have any duty to inform your clients that if they suspect illegal activity, they're going to report it to the police? They have no such duty, your honor. I understand your argument about that, but we're talking about the consumer fraud now. Correct. Do they really have a duty to inform your clients that if they suspect illegal activity, they're going to report it to the police, as provided under Arizona law? Your honor. That's, in fact, it seems to me, the extreme of your argument, where you're really going under consumer fraud. Wal-Mart says in their policy, we are not the police of the world, and they do not warn their customers, as required under Arizona consumer law, about the true facts relating to the service contractor about to enter into. The fact that Wal-Mart may, despite the fact that they say we're not the police of the world, may want to protect themselves, and that's our argument. Wal-Mart adopted this policy, not because they really are that concerned about being the police of the world, but rather because their employees did not want to print photographs that showed nudity, in addition to which Wal-Mart did not want to have on its premises photographs that could be held to be contraband. What exactly should Wal-Mart have said when they brought the film in? What should they have been told? Wal-Mart should have told its customer exactly as they told them on the printed screen on the computer, on a copyright law. The law says that we cannot print copyrighted pictures. If you do, you could be in trouble. Now, for 25 years, going back to 1990 and prior thereto, the Photo Marketing Association, of which Wal-Mart was a member, told its customers exactly what we're saying, which is that if you provide us with pictures that show nudity, we reserve the right to decide if there's something illegal about these photos, and that we reserve the right to present them to the police. That's what they told them for 25 years. Our district court judge found, as a matter of law, no reasonable consumer could have the expectation that Wal-Mart would make the kind of warning it made for 25 years.  The district court may have been saying that any reasonable person would expect his pictures to be looked at by some human when he brought them even to a kiosk that seemed to be automatic. Somebody would look at them when they packaged them up or something like that, so he didn't see why there would be an expectation other than that those pictures would be looked at. Once they're looked at, he sure begins to get into the immunity problem. Let's say for a second that we agreed with you. What was the cause of the damage to your plaintiffs? Wal-Mart's unsuitable print policy, which gave its employees unfettered ability to look at any photograph they found depicting nudity and then calling the police through the store manager. And what were the damages? The damages are that they lost their children for legal control of their children for nine and a half months. They lost possession of control of them. Did Wal-Mart take their children away or did some independent agency decide that it was? The police took them away, as had been happening around the country in all the other cases we've cited to the court where Wal-Mart had this problem in the past. They know that this policy is going to get innocent people caught up in the police and in the juvenile detention system because they're having their employees, not because they tell the truth to their customer that they're going to do this kind of conduct, but because they just do it. Now, let's be clear. We're not ever saying, and don't argue, that Wal-Mart and its employees should not report to the police any photograph that shows some sexual touching, some sexual acting out, some sexual conduct. These photographs, as found by the juvenile court judge, as found by the child advocate who was appointed by the court to represent the children, and as was found by the psychosexual expert who examined the parents, and the photographs who had been agreed upon by the state and the demeres to review the photographs, found that these were innocent bath time photos. And what happened is that the Wal-Mart clerks did what they did, and they reported it to the police, and our position is that Wal-Mart knows this is going to happen because it's happened so many times in the past, and it has consequences for the customer, and Wal-Mart has a duty to tell its customer the truth under the Arizona Consumer Protection Act. Let's assume that's true, but don't you have a problem, as Judge Canby suggests, with causation? There's intervening events that occur here. There's a referral to the police, and then some police officer exercises legal judgment to determine whether the photos are prohibited or not, and isn't that a significant intervening event that kind of breaks the chain of causation between Wal-Mart's notification and the damages or the harm that you say your clients suffered? Under Arizona law, the intervening event only becomes supervening legally if it's not foreseeable within the ambit of possible things that can happen. The clerk at Wal-Mart doesn't know what judgment the police are going to exercise, and here, as I read the record, the notification to the police was pretty neutral. It just said we've got some questionable photographs. Wal-Mart didn't take a position that these were prohibited by law. We want you to come look at them. Your Honor, we didn't sue any clerks, okay? We didn't say that you did something bad or wrong. We sued Wal-Mart because it as an entity has adopted a policy of not telling its customers the truth because it's doing so in order to protect itself from having employees upset about having to vet pictures that show nudity. Just pass it along to the store manager, pass it along to the police, that takes you off the hook. Wal-Mart itself wants to get itself off the hook, so it passes them on to the police. Did I understand you to say that Wal-Mart used to give such notice but no longer does, or just that they belong to an organization that recommends such notice? Wal-Mart gave the warning, as did all of the other entities in the Photo Marketing Association, for 25 years. When did it stop? 1989, when, ironically, the expert Wal-Mart has now hired, put out his model uniform unsuitable print policy for stores to follow, which changed the whole emphasis of what was happening. And the background of that is that the law was changing in terms of the possessor of photographs that contained nudity being held, per se, liable to the law for holding contraband. And Wal-Mart didn't want the contraband in its hands, so they passed it along to the police, which is fine if there is sexual acting out in the pictures and if there is sexual content in the pictures. These were simple, nude pictures that everybody has in their scrapbook, not everybody, a lot of people have in their scrapbook somewhere, that some clerk took offense to, that some manager took offense to, and they escalated them to the police. Is there evidence in the record of whether other photo processors, Wal-Mart's competitors, give such notice? Yes, absolutely. And do they? Yes. No, they don't. I'm sorry, I apologize. Do they do it today? I don't know. We never got to that point in discovery. But Wal-Mart did for 25 years, as did the rest of them, and they didn't change it because it wasn't a good thing or because it wasn't honesty to your consumers. They did it because of this change in the law in terms of not wanting to hold contraband in their hands, and there's evidence of that. And they knew that this kind of conduct could happen to customers like A.J. and Lisa. I reserve my minute. Thank you. Thanks. I'm reading my notes wrong. Dick, just let me know. Sure. May it please the Court, Larry Kasten on behalf of the Applees. The Court and opposing counsel spent some time today talking about the merits of the consumer fraud claim, and Judge Smith, I think your observation is exactly right on the merits. They're asking to be advised about what the law is. There's no law in Arizona, of which I'm aware, that says it's reasonable for a customer to expect to be advised about what the law is. But I think it's important to note before the Court even gets to that question, the merits of the consumer fraud claim, it has to first ask, is this claim barred by immunity? And I think some of the answers that opposing counsel gave to Judge Canby confirms absolutely that it is. The statutes that we've cited provide immunity for any civil liability that's premised on a report of questionable harm to children to the police. Mr. Treon confirmed that at the end of the day, his consumer fraud claim is exactly premised on the fact that Walmart made a report of these photographs to the police. He said that the damage here was that after that happened, the police and the CPS came and took the children away. That's the essence of the argument. So again, the statutes themselves, and we've cited them often, 13-3559 and 13-3620, both say a reporter who either suspects child abuse or reasonably believes there's child abuse and who makes a report without malice is immune from any civil liability. There have been various arguments made in this case that somehow the Arizona legislature implicitly or silently meant to exempt out consumer fraud from that prohibition, from those immunity provisions. There's simply nothing in the record to establish that. It would be a rather significant hole in the immunity statutes if somehow they didn't cover consumer fraud claims. They both say, however, unless the person acted with malice, correct? Yes. Is there any evidence in this record of bad faith or malice? No, Your Honor. And let me be clear on what they say. The malice or bad faith needs to be in the act of furnishing the report. Okay? It's not a roving charter to try to find some alleged bad faith somewhere in the company that you can then say was malicious and therefore takes you out of the bad faith or malice box. The evidence in this record is clear that there were only three employees who participated in any way in the events that led to the decision to make the report to the police. So the statutory question, the only immunity statutory question, is whether any of them acted with malice or in bad faith. Their undisputed testimony is we did what we did because we were concerned about these children when we saw these photographs. There's no evidence to the contrary in the record. Plaintiff's counsel deposed them for hours trying to put a dent in that testimony. There's never been any suggestion that they had some ulterior motive. Is it clear that the photos fall under the definition of abuse under the immunity statutes? Your co-counsel says that these photos didn't depict any touching, anything like that. Does that constitute abuse under the Arizona statutes? Yes, but let me say the issue is only whether the employees reasonably believed they constituted abuse or reasonably believed or suspected. One of the statutes doesn't even have a reasonableness requirement. The one referring to stored images says whether or not the employees suspected that they were exploitative. And the Arizona courts in interpreting one of these statutes have said that's a very low standard. A hearsay report, a behavioral counselor that hears from another person that a child may be being touched inappropriately by their father may make a report. In Arizona, the courts have held that hearsay report is enough to have a reasonable belief or a suspicion. But anyways, Your Honor asked about the contents. I was going to say, his question really doesn't go to that. It's to the contents of the photographs themselves. They're in the record. I don't know whether or not the courts had a chance to look at them. My reaction is different from saying they're simple bath time photographs. They may have been taken at the time of a bath. Your opponent suggests that unless there's some sort of depiction of sexual activity, it couldn't be, in the terms of the immunity statute, suspected visual depictions of sexual exploitation of a minor. And that's wrong, Your Honor. Exploitation of a minor can include child pornography, which can be pornographic even if there's no touching. I think, though, the reason I answered Judge Burns's question the way that I did and the reason the statutes have a reasonable belief or a suspect qualifier is because we're not asking Walmart employees to be making that precise decision. It's do you believe that there might be? If you are, get these things into the hands of the people that know. And that's precisely the breathing space that the immunity statutes provide. But back to the pictures themselves, a few things I'd note. We can all look at them. Let's think about this abuse again. Yes, Your Honor. If I go to 133620, where do I find this definition of abuse? So the definition of abuse appears in the last section, and it cross-references another Arizona statute, 8201, which in turn references the Arizona criminal law of sexual exploitation, which in turn includes exploitative photographs. So what you're really arguing, as I understand it, is based on that, we can get to abuse without even getting to child abuse, and both would really be predicated on sexual exploitation. Is that your argument? I can't say it better, Your Honor. That is my argument. Would any reporting of a nude photo of an obviously minor child be immunized, in your judgment? I think it would depend on the photograph, but probably, especially under the first statute that just says that the reporter has to suspect. If they suspect it in good faith and without malice, yes. And then we rely on the police to do their jobs and say, no, no, no, put those back in the envelope and give them back. That would depend on which employee is working the photo booth on a particular day, right? Sure. I mean, immunity is always going to depend on what happens with the particular actor. But I think the cases and the legislature makes clear that what we want to happen is not, as I fear may happen after this case, for the employee to sit there and say, boy, if I turn these over, my employer is going to spend a million dollars in legal fees and I'm going to get hauled in front of a deposition for eight hours, maybe I'll just stick them back in the envelope and not worry about it. The immunity is to prevent exactly that from happening. Again, with respect to the three employees who made this decision, no evidence whatsoever of malice. Judge Burns, I think on the causation element, you can put all of this to the side, by the way. Causation is a completely independent basis for affirmance here. The trial court didn't need to reach it. We argued it in our summary judgment papers. We cataloged in our brief no fewer than nine separate intervening decisions that were made after the handover of the prints, including a Superior Court judge saying, looking at these photographs, I understand the reason for concern. And the foreseeability argument here is not just it's foreseeable that there would have been this intervention, but plaintiffs are actually alleging that all these municipal and state actors acted maliciously, conspired, did bad things, wanted to hurt their clients. And he has to make that argument because he's suing them for millions of dollars as well. But the point is that what he's saying is it should have been foreseeable to Walmart that these people all would have not done their jobs, acted with irregularity, and acted with malice in order to harm the demerese. We cited the Wolf case from the Fourth Circuit on causation. In that case, what happened is a behavioral center employee made a report based on something that a parent had told her that she thought the parent might be intending to harm the children. She reported it to the police. Child protective services became involved. The mother turned around and sued the behavioral center and the reporter. And the Fourth Circuit said, in that case, the intervention of child protective services broke the causal chain. And it said so under Virginia law, which is identical to Arizona law with respect to proximate causation. I think Wolf, standing alone, without any of these immunity questions, consumer fraud questions, any of that is an independent basis for affirmance. Unless the Court has further questions, it was my pleasure to argue today, and thank you. Thank you. Let me speak to Judge Byrne's concern first, whether or not the statute talks about abuse. It doesn't. The sexual exploitation statute says that a person commits the crime of sexual exploitation by taking a photograph for the purpose of the sexual stimulation of the viewer regarding childhood photography. There's nothing in the immunity statute that talks about abuse. What it says is that Walmart, a commercial enterprise, who is not at all like the doctors in the advanced cardiac specialties case that the judge relied upon in throwing out our negligence and false light claims on the basis that somehow or another we didn't meet all the standards of clear and convincing evidence and reversed the burden of proof as required under a qualified immunity analysis, which is what advanced cardiology is because it's a defamation lawsuit. She took all the standards out of defamation and said, in this case, we had to prove in order to show negligence as a part of Walmart in our negligence case and our false light case that we somehow or another met those constitutional standards of somebody who's trying to protect their right to speak. That case and her analysis has nothing to do with this case. The statute says it's permissive. Walmart may. Walmart decided to get into the business of processing photographs. Why? It's their sixth largest line of commerce in hundreds of lines of commerce and the biggest commercial enterprise in the world. They make a gazillion amount of dollars out of it every year. So here's what I'm having a little difficulty understanding. What warning should Walmart be giving in your judgment? The same one they gave 25 years ago. Which is what? Which is that we... If you give us nude photos of children to process, there's a chance that we'll turn these over to the police. Not at all. We reserve the right to review your photographs as you provide them to us. And if they contain nudity, be warned that our clerks will review them. And if they decide, which is their standard, they're bothersome or troublesome to those clerks, they will have the right to report them to the police because that's their policy. And they should tell the customer the truth about that just like they do right now and did in 2008 at the time of our transaction at Walmart.com. So they tell the people on the computer, but they don't tell the people at the screen when you stick your memory stick in, thinking this memory stick, just like he did at Walgreens, the testimony is he did this before at Walgreens, pictures with childhood nudity. They're not pictures with sexual exploitation and this idea these are bad pictures. There's been a judge and a child advocate and a doctor who said, this is a subject matter, who said, no, they're not. They're simple bath time photographs. So in those circumstances, Walmart can do this like they do on the copyright thing. They've got another screen that comes up and they say, just like I said, be warned that we reserve the right, just like they do on our Walmart.com, to review your pictures and if we find nudity, we're going to check those and see if they violate the law. That's all they've got to tell me. AJ has said, this is an affidavit, that had he been told that, he would not have entered into this transaction. He would not have given him his money because he did not want his children's nudity to be seen by people. And the fact that he, by the judge, was found, as a matter of law, to be unreasonable in believing that they weren't going to look at his pictures, is in itself a reversible error because there's a genuine issue of material factor whether or not his belief or his expectation was reasonable. Thank you, Counselor. Your time has elapsed. We appreciate it. Thank you. Case 11-17474, Demery v. Walmart, is submitted. We thank you, Counsel, as we did last Counsel, for coming and being here at the University of Arizona. We appreciate you making your arguments here and giving the students the chance to see good lawyers talk to us and present their cases. We thank the students for their courtesy and for being here with us. We hope this has been educational to you. And I very much appreciate having Counsel submit their cases in this manner and us having a chance to be here with the students and thank Judge Canby and Judge Burns for being here with me. Our court is in recess. Thank you very much. All rise.
judges: Burns, Canby, Smith